Mr. Flaxman. Thank you. Somebody's pen? Nobody wants it. I want a pen. Thank you. Good morning, Your Honors, and may it please the Court. This case comes before the Court on an appeal from the order granting a Rule 12b-6 motion to dismiss. In granting the motion, the judge relied on hearsay statements contained in a document filed in state court proceedings. Let me ask you this, Mr. Flaxman. There is this document filed in the state court, and indeed it comes before County Circuit Judge Nuss, who finds probable cause to support the arrest and continued detention of Ms. Ewell, and then there's actually sort of a redo a little while later at the habeas corpus hearing, where Judge Nuss repeats, yeah, I still think there's probable cause here. So we don't just have a document. We have something on which the state court relied, and I just wonder if it's your position that any time anyone would like to challenge their detention in, let's say, a state court, that it's impossible to use Rule 12b-6, because all I have to do is allege I was detained without probable cause, and that we would have to accept that as true, and that we couldn't rely on the state court's order so finding. That would be troublesome to me if that's where you are. It should not be troublesome in this case, Your Honor. No, but I'm asking you the general case, because I can't see the difference between this case and the general case I've posed. In the general case, the state court judge will have complied with the Fourth Amendment and have acted upon documents or sworn testimony that's based on oath or affirmation. So you want us to look behind the state court, make sure it was sworn, make sure we like what was said? The Fourth Amendment requires oath or affirmation. This document before you, that probable cause statement, has a box where there's a notary to sign, subscribed and sworn to before me. That's not done in this case. Right. And then we have the hearsay statements of what the officer said, and the question could eventually be, on a motion for summary judgment, do the facts in this affidavit or this unsworn affidavit establish probable cause? But don't the officers appear before Judge Nuss, though? Judge Nuss stated at the habeas hearing that he just looked at the documents. There was no oral testimony. Not testimony, but they're there. I mean, they're available. They're available, but this court just decided the case, which I think some members of the panel might recall, called Vonsall White v. City of Chicago. Well, Mr. White said, we don't know what the officer said to the judge. And the court said, well, if he read his report, he said he was sworn to under oath, and if he read his report, there would have been probable cause. In this case, the judge just looked at the document, did not talk to the officer. He could have asked the officer. He could have had the officer sworn under oath. But all he did was rely on the document. And when we get to summary judgment on this. So your view, though, I mean, and this is what, I've got to be honest, really troubles me about this case, is that we are not entitled to place any weight at all on the fact that the state court, not once but twice, found probable cause. Finds it in the habeas hearing where there is testimony, finds it earlier on when the 15-minute or hour and 15-minute belated Riverside proceeding is going on. Well, there are five factual errors I'd like to correct. It's not 15 minutes. Ms. Ewell was arrested at 2 p.m. We allege that in the complaint. At 3.32 p.m., Ms. Ewell exercised her right to remain silent. At 4.05 p.m., the officer filled out the statement and said, I arrested her at 4 p.m. You just did what the district judge did, which was to say, well, if it's in the statement, whatever's in the complaint, we must reject it. That was so fine. Have it 2 p.m. It's 4.15 p.m. on the Friday that the state judge, which he acknowledges is late. He acknowledges that it's beyond the 48 hours. And it's an affirmative defense to establish the reason for that. And we don't usually resolve affirmative defenses on a Rule 12b-6 motion when it's not alleged in the complaint. Is this? We didn't allege the basis for any explanation. I thought an answer was filed. The answer was filed, and we filed an amended complaint. There was a 12b-6 motion after the amended complaint. So why isn't it 12c, because there's no answer to the amended complaint? That's correct. Okay. But what we have in the we have the district judge saying, well, whatever the officer wrote in the unsworn probable cause statement trumps whatever is alleged in the complaint. That's not the way this court has traditionally done it. Counsel, I would phrase my colleague's question just a little differently. Let's suppose the state judge made a mistake, either procedurally or substantively. Your theory seems to be that when a state judge makes a mistake, the officers have to pay damages. The state judge doesn't have to pay damages because there's judicial immunity, but the officers have to pay damages. Usually we would say, no matter what else one may think about this, the officers who rely on what a state judge has done have official immunity. Why isn't that enough here? Well, it wasn't the judge's mistake that the officers arrested Ms. Ewell at 2 p.m. and did not fill out paperwork until 4 or 2. The judge found that there was probable cause. Now, the Supreme Court has said that unless the officers are, you know, spacey in thinking that there was probable cause, there is immunity. Here we have a state judge who found there was probable cause at least twice. I appreciate your argument that the state judge was in error, but why would one say, well, the state judge was in error, therefore the officers must have been spacey, and therefore they don't get any immunity under Malley v. Briggs and similar cases? The case to which I think you're referring involved an affidavit signed by the officer. In Malley v. Briggs there was a search warrant affidavit which the court said if an incompetent officer should have known that there was no probable cause. In this probable cause statement, we don't know what the officers knew when they arrested her. Maybe my question is not sufficiently clear. This is a case in which the officer arrested believing that there was probable cause. A state judge is then asked whether there's probable cause, and the state judge says yes, twice. Right? I appreciate your argument that the state judge ---- I'm not saying right, because I think you're absolutely wrong. I don't know. I think I would argue ---- Look, look. You don't think the state judge ever found probable cause? He did. I don't believe the officers believed there was probable cause. I believe that they thought ---- All right. I don't see any point in carrying on if you won't address my question in the way it is posed. Well, your question assumes that ---- You can answer questions that you wish I had asked, but I wish you'd answer the question that I actually asked. The problem, Your Honor, is asking a question which assumes facts that are patently inclined. Fine. When a judge asks a question, you need to indulge whatever assumption the judge is making. You can't just say, no, I'm going to answer the question you should have asked instead of the question you did. I am thrilled to ---- This is over. Thank you. I think that if the court is going to say, based on papers prepared two days after to show a judge that there's probable cause two days before on a Rule 12b-6 motion, we're really changing Rule 12b-6, and we should not be doing that. We should be following the established and ordinary rules for Rule 12b-6. On a 12b-6, generally, we do not adjudicate affirmative defenses that are not raised in the complaint. On a 12b-6, we do not make findings of fact based on unsworn documents that are not attached to the complaint, which contradict the expressed allegations of the complaint. I think that if this case went to trial, a jury would believe that the officers arrested Ms. Yule back on November 20th because they thought they would get her to confess. They talked to her. She wouldn't cooperate with them, and they said, you're coming down to the police station. And they held her about an hour and a half after she got to the police station. She said, I don't want to talk to you. They then waited another two days, more than 48 hours, before they asked the judge to say there was probable cause. And what's significant about the record that we have is there's no minimus. There's no cappius. There's no order from the judge saying, hold this woman in custody. There's just the notation on that probable cause statement, bond denied, pending court appearance. But there is no court appearance. Then Ms. Yule was held for another week or 10, 12 days, I think, while they tried to build the case against her. And then they finally get her sister to tell them where the body is, and they charge the sister and let Ms. Yule go free. This is not an issue that can be fairly or properly adjudicated on a Rule 12B6 motion. And the district judge made the same mistakes that some members of this panel are trying to do by changing the facts from what are alleged in the complaint to say, well, what if it's the police officer's fault? Why should the police officer pay? Because the judge took 15 minutes longer than he should have taken to review the document. The facts of this case are that the officers didn't fill out the document until more than 40, until 50 hours after they had arrested Ms. Yule. And it's their fault, not the judge's fault, that there wasn't any kind of determination within 48 hours. We also believe that the Fourth Amendment talks about oath or affirmation applies to Gershwin. Let me just ask you a question. On this probable cause affidavit that was filed, it is quite detailed. Well, look at it carefully. Yeah, but what I'm saying is, are you saying then that the officers lied in the statements that they put forth for the judge to make the finding on probable cause? There's nothing in there that implicates Tina Yule in any criminal wrongdoing. One paragraph says she was with her sister on Friday, November 1st, when they bought new shower curtains. Another paragraph says on Sunday, November 3rd, Ms. Yule and her husband went to take care of Ms. Nance's dogs. The third paragraph talks about, well, when we searched the search warrant of Ms. Nance's house, we found some biologic material in the shower, in the sink. That was stuff done after Ms. Yule had been arrested. At the time they did the search warrant, they didn't know that Mr. Nance was dead. They didn't know how he had died. They really did not have probable cause. Assuming that everything that's in this is correct, they did not have probable cause. Tina Yule's only admission, I think it was the third, was that she went to Ms. Nance's house to let the dogs out. And that's what her husband said. I was there, too. And I would argue, if we ever get to that point, and I don't think we should be at that point on a 12B6 motion, that there are material misstatements of fact that were put in this to mislead the judge, to cause him to say there was probable cause to hold Ms. Yule. But even if there was probable cause to hold her, why is the court willing to say it's okay to hold somebody without charge while you tried to build a case against her? As Justice Thomas pointed out, the colonists didn't believe that was the law. They believed that you arrest someone to charge them. That isn't what happened in this case. Thank you. All right. Thank you. Mr. Bitar? Good morning. May it please the court. Ramzi Bitar for Detectives Ledger and Bobo. What the plaintiffs are doing here should be troublesome to this court. They acknowledged before the district court, page 22 of the district court's decision, this is not a misconduct or fabrication type case. This is solely a was there a probable cause, false arrest type case, and also their 48-hour claim. So this case has nothing to do with alleged fabrication or alleged misconduct, and all those kinds of cases that may be cited or talked about should be thrown out the window. And what they're doing here is troublesome because their complaint is an outright fabrication itself. When they filed this federal civil rights lawsuit, the probable cause affidavit was sealed. So they walked into federal court knowing that she could be charged with a serious, serious crime and made very conclusory allegations that there's no probable cause. Despite the criminal trial judge judging us, twice finding that there was probable cause. So they waltzed into federal court and filed this complaint with these conclusory allegations. That prompted the response to introduce on the motion to dismiss the probable cause statement. They put it in issue. And this court takes a very expansive view of what can be introduced on a motion to dismiss in certain circumstances in the interest of economy. This Seventh Circuit did it in a case called Williamson several years ago, a Fourth Amendment false arrest case where the court affirmed dismissal on a motion to dismiss, finding that it was appropriate under the facts and the procedural background of that case to take into consideration investigation reports. So what do you say to the notion that these allegations at the 12B6 stage, some allegations at least at the 12B6 stage, have to be taken as true? We know from Twombly and Iqbal that legal conclusions don't need to be taken as true. And we also know from Twombly and Iqbal that something that's really just a conclusion doesn't have to be taken as true. Whatever plausibility means, I've actually never been able to figure out. But it needs to be plausible. So we have allegations here. Defendant Ledger, paragraph 24, intentionally excluded from his probable cause statement the fact known to him that Defendant Tony would not file a criminal complaint against a plaintiff without additional information. What do you say about that? Well, we looked at the Williamson case before we filed this motion to dismiss. And that case strongly suggested that the way they pled this complaint, with so many conclusory assertions, that it would be appropriate to introduce the probable cause statement showing that it was a completely false allegation. The complaint doesn't allege that she suffered any type of harm. So is it your position, say, in paragraph 26, where it says the probable cause statement signed by Defendant Ledger B did not contain sufficient facts to warrant a reasonable belief that plaintiff had committed offense? That's the kind of incorporation of the probable cause statement that allows a court to look at it at 12b-6? Under the circumstances of this case, because they did not have access to the probable cause statement when they filed this complaint. So those allocations are purely conclusory. They don't allege any particular facts as to what particular facts were omitted from the probable cause determination or any particular facts that should have been included or that were fabricated. Again, this isn't that type of case. They're really squabbling with whether she was wrongfully held over two extra hours, and that's not the case. But even if it was, she's not alleged any type of harm. She still had a prompt judicial determination of probable cause. Once that probable cause determination was made, the matter then goes into the judicial process. So why wouldn't that support maybe nominal damages for the 2 hours and 15 minutes of detention before the finding of probable cause? If you look at the habeas transcript at page 22 and 26, it is very clear that the detectives were ready to go, had the probable cause statement, and the judge, Judge Nuss, specifically asked them to come back later in the afternoon. And he does a very thorough job of explaining that none of this should be laid at the feet of the detectives, that it was him and his court, and I'm not blaming him, but he does a great job of explaining why he was so busy handling intake for three weeks. This is a complicated case. We have a missing person. We've got two sisters with a lot of credible evidence pointing towards them, including statements that they're falsifying information to the officers, and the judges couldn't get to it. So I don't think that there's any violation whatsoever of the Gerstein and Riverside rules, and when we look at Gerstein and Riverside, and we look at cases like Portis and Bridewell in this circuit that interpret those cases, they all take a very contextual, nuanced approach to the issue. None of these courts is saying as a threshold matter that someone, that a police officer should be entrenched in financial liability under a civil rights claim because they're allegedly 15 minutes late or allegedly two hours late. But we don't need to get there because we have a judge Nuss explaining it wasn't the detective's fault. He asked them to come back later in the afternoon. And, again, that's pages 22 and 26 of the habeas transcripts that's attached to the supplemental index. I believe I have about eight minutes. Well, you have some, and, yes, you have eight minutes, and I guess. I wasn't sure which light this was. I'm sorry. On your side, it probably doesn't mean too much, but the yellow line will mean you have a minute. The other component of their claims is they believe there was some type of conspiracy between the district attorney and the detectives to hold her over for these additional days beyond the initial 48 hours. But for that type of claim, it shouldn't be flowing to the detectives in any event because Judge Nuss had made the probable cause determination at the 48-hour mark or an hour or two over the 48-hour mark. And at that point in time, as the Lovett Court explains in this circuit, the judicial process took over, and the detectives should not have been involved in that type of claim. I see that my time is up. Thank you. All right. Thank you very much. Mr. Johnson-Karp. Mr. Johnson-Karp, do you think that we should in any way delay this case for the Supreme Court's decision in Manuel against Joliet? Your Honor, as to my client, I don't think it's necessary. Manuel involves officers' fabrication of evidence, and the issue there is I think whether that fabrication gives rise to a continuing seizure claim against those officers. Here, Ms. Ewell has disavowed a sort of fabrication claim, so we don't have the same sort of allegations that arose in Manuel. And so I think there are sufficient bases for this Court to affirm the dismissal separate from the issue in Manuel. As to Mr. Toney, all of the allegations in this case relate to his decision about whether or when to charge Ms. Ewell. There's no allegation that he was actually involved before the probable cause determination. The allegations as to Mr. Toney relate to the period following probable cause, after the Court made the probable cause determination and held Ms. Ewell pending the bond hearing. And this Court and the Supreme Court's cases make clear that that is no longer a viable Fourth Amendment claim and that that would be a due process violation. There are some allegations, though, aren't there, that he's somehow guiding the investigation beforehand, or at least the decision to detain her, even though there are allegations that he's not planning on moving ahead unless he gets more evidence. Your Honor, Ms. Ewell has effectively disavowed any allegations that Mr. Toney was involved in the arrest, was involved in the detention before Judge Nuss made his probable cause determination. And I would point the Court to Ms. Ewell's brief in this Court, as well as before the District Court in docket entry 53, page 19. Ms. Ewell said, Tony's involvement in the conspiracy does not involve the decision to arrest plaintiff or the decision to seek a judicial determination of probable cause. And she's reaffirmed that position, that the 48-hour violation really doesn't pertain to Mr. Toney. So once we have that probable cause determination... Then you think Mr. Toney drops out anyway because he's being detained pursuant to judicial order. Ms. Ewell drops out, yes. No, Mr. Toney, the claims against Ms. Ewell's claims against Mr. Toney, I'm taking your position is drop out as soon as her detention is pursuant to judicial order. Absolutely right, Your Honor. And as an alternative basis, once that judicial process is effectuated, he's also subject to absolute prosecutorial immunity. During that period, he's evaluating whether to bring charges. He's waiting on additional evidentiary support to support possible homicide charges or, as she was arrested for, concealing corpse, which was, in fact, what she was ultimately convicted of. Her sentencing is next week? That's correct, Your Honor. But that's not really relevant to what's before us today. We're focusing on this much more narrow time. Or is it relevant somehow? I believe there's an issue of damages. If she receives sentence credit, that would relate to damages potentially, but obviously damages are somewhere further down the road that we would like to avoid going. Okay. Unless the court has any further questions, we would ask that the court affirm the dismissal below. All right. Thank you, Your Honor. Thank you. How much time does he have? You have two minutes, Mr. Braxman. There was a question which assumed that Ms. Ewell was being detained pursuant to judicial order. We've never seen a judicial order. There's this notation on the probable cause affidavit, no bond. There's no order to the sheriff saying, hold this woman until further order of court, which is what we usually have when there's a court order remanding someone to the custody of the sheriff. Ms. Ewell did not know what the charges were. Nobody knew. There were no charges back in November 22nd. She wasn't being detained pursuant to a judicial order. She was being detained pursuant to FIA, to the sheriff holding Ms. Ewell because she'd been arrested and the officers brought her to the sheriff saying, oh, she's being charged with some offenses. But she was never charged. She was held without the Fourth Amendment ending, even this court's Fourth Amendment jurisprudence. If we look carefully at the transcript of the habeas hearing, we won't find the finding, but re-finding of probable cause. There's the judge saying, oh, we don't have to hear that again. And I'm not going to tell you on what I base the finding of probable cause because that's sealed. It would be unfair to let the public know why this woman is being held. The final point is a typo about the page, but if you look at the supplemental appendix, page 6, paragraph 9, is an admission by Mr. Toney that the prosecutor is waiting for more evidence to come in from police and Department of Investigation and State Department of Justice to make a determination of whether to release or to charge her. The court should reverse the order granting a 12 v. 6 motion to dismiss. Thank you. All right. Thank you. Thanks to all counsel. We'll take the case under advisement.